# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                )
**CARMELO FIGUEROA,**          )
                                )
      **Petitioner,**           )
                                )
      **v.**                       )     **Criminal No.**
                                )     **06-40007-FDS**
**UNITED STATES of AMERICA,**  )
                                )
      **Respondent.**        )
_____)

## MEMORANDUM AND ORDER ON
## PETITIONER'S MOTION TO VACATE UNDER 28 U.S.C. § 2255

**SAYLOR, J.**

Petitioner Carmelo Figueroa pleaded guilty in August 2006 to various drug charges and was sentenced to a term of imprisonment on May 1, 2007. No appeal was filed. He now moves for relief under 28 U.S.C. § 2255, alleging, among other things, ineffective assistance of counsel in failing to appeal his conviction. For the reasons set forth below, the petition will be denied.

## I.    Background

The facts are stated as reflected by the expanded record, which now includes the government's production of telephone records of conversations between Figueroa and his attorneys during his incarceration.[1] For present purposes, the Court will interpret the evidence in the light most favorable to petitioner.

In August 2006, Carmelo Figueroa pleaded guilty to various drug charges. He was sentenced to a term of imprisonment on May 1, 2007. At the conclusion of the sentencing, the

---

[1] These records were provided by the Department of Justice in response to the Court's order of October 24, 2011, granting Figueroa's motion for discovery.

Court advised him as follows:  "[y]ou can appeal your conviction if you believe that your guilty

plea was somehow unlawful or involuntary or if there was some other fundamental defect in the

proceeding that was not waived by your guilty plea . . . [y]ou must file any notice of appeal

within ten days after entry of judgment."  (Sent. Hrg. Tr. at 20-21).  No direct appeal was filed.

Figueroa now contends that he asked his attorney to file an appeal, and that his attorney's failure

to do so constituted ineffective assistance of counsel.

Figueroa was originally represented by attorney John Benzan.  On May 14, 2007,

Figueroa made a two-minute telephone call from Wyatt Detention Center to Rafael Benzan, the

father of his attorney.  Figueroa contends that he communicated with John Benzan through

Rafael because Rafael spoke Spanish.  Figueroa also contends that the purpose of the call was to

inquire about the filing of his appeal.

The Court entered the final judgment and commitment order on May 15.  Under the then-

existing provisions of Fed. R. App. P. 4(b)(1)(A), any notice of appeal was due no later than

May 30, 2007.[2]  On May 24,  relatives of Figueroa retained attorney Matthew Smith.  The

retainer agreement specifically obligates Smith to work on a "motion to vacate plea/crack ratio,"

but makes no mention of a direct appeal.  It is undisputed that the motion referred to was a

motion to reduce Figueroa's sentence pursuant to 18 U.S.C. § 3582(c)(2).  Figueroa contends

that attorney Smith was hired to file an appeal, and that he believed that Smith was "working on

his appeal."  No appeal was ever filed.

------

[2] At that time, Fed. R. App. P. 4(b)(1)(A)(i) mandated that a criminal defendant's notice of appeal be "filed within 10 days after the later of the entry of either the judgment or order being appealed."  Fed. R. App. P. 26(a) provided the method for computing time when such a deadline was given in the rules; for deadlines shorter than 11 days, intermediate Saturdays, Sundays, and legal holidays were excluded.  Therefore, in this case, Saturday and Sunday, May 19 and 20, would have been excluded, as well as Saturday and Sunday, May 26 and 27, and Memorial Day, Monday, May 28, making the 10-day filing period, as computed under the rules, end on May 30, 2007.

According to telephone records, Figueroa made four calls to attorney Smith between March 13, 2008, and February 10, 2009.  Figueroa has not made any specific assertions concerning the content of those calls.[3]

On June 27, 2008, more than one year later, Smith filed a motion seeking a reduction of Figueroa's sentence pursuant to 18 U.S.C. § 3582(c)(2) in light of the retroactive amendment of the sentencing guidelines concerning crack cocaine.  Defendant's motion papers made no reference to any appeal.

On November 24, 2008, Figueroa wrote to attorney Smith.  The "subject" line of the letter stated, "Status of Pending Motion 3582 (c) (2)."  The text of the letter stated in part as follows (errors in original):

> The reason of this letter is requesting information about my pending Motion 358 (c) (2), that was filed on April 15, 2008 [*sic*].  Would you please send me the status, and also advise me about the legal matters.

There is no mention in the letter of any appeal.

On July 21, 2009, this Court denied the motion for reduction of sentence.

On August 16, 2009, Figueroa wrote another letter to attorney Smith in which he complained about receiving no response to two previous letters and about the representation generally.  That letter also made no mention of any appeal, but did include a summary of petitioner's own legal research into the crack sentencing guidelines.

---

[3] Petitioner's only references to these calls came in his supplemental memorandum responding to the discovery production and make no affirmative assertions with regards to their content.  The petitioner asserts: ". . . it is quite possible that Petitioner did in fact inquire on the status of the appeal, only to be assured that the appeal was filed and pending . . . The government's explanation that Petitioner made one call to his attorney on May 14, 2007, then made additional calls on March of 2008, *does not disprove* his allegations that during those calls he had requested a direct appeal be filed and that he was advised that the appeal was in the process of being filed."  (Pet. Resp. to Disc. at 2) (emphasis in original).

Figueroa contends that he did not learn that no direct appeal had been filed until about August 25, 2009.  Precisely what he learned, and when, is not clear; he contends (in his memorandum) that a fellow prisoner "explain[ed] to him what occurred."

On September 3, 2009, Figueroa (acting *pro se*) filed a notice of appeal of the denial of his motion to reduce the sentence.[4]  The Court of Appeals eventually affirmed this Court's ruling in August 2010.

On March 8, 2010, Figueroa filed a "Motion to Resubmit a Notice to File Out of Time Direct Appeal," alleging ineffective assistance of counsel.  In a Memorandum and Order dated May 24, 2010, this Court denied the motion, explaining that such a claim involved a factual inquiry that should be raised in a collateral proceeding brought pursuant to 28 U.S.C. § 2255. The Court explained that such a § 2255 motion was subject to a one-year limitations period that runs from the date of final judgment, but took no position on whether such a petition would be timely, or whether equitable tolling would apply.[5]

On June 8, 2010, Figueroa was transferred from federal custody to Massachusetts custody for trial on state narcotics charges, during which time, he contends, he did not have access to a federal law library.  He was returned to federal custody on January 19, 2011.

On February 25, 2011, Figueroa filed a motion under § 2255 to vacate, set aside, or correct his sentence, alleging, among other things, ineffective assistance of counsel in failing to

---

[4] The Court later held that the notice of appeal was timely filed, on the grounds that he had not received notice of the decision until August 27, and that he had established good cause for an extension of time under Fed. R. App. P. 4(b)(4).

[5] The Court noted at the time that the First Circuit had "yet to decide whether the doctrine of equitable tolling applies to § 2255 petitions."  (Memorandum and Order at 3 (quoting *Bearreto-Barreto v. United States*, 551 F.3d 95, 100 (1st Cir. 2008)).  The First Circuit has since held that equitable tolling principles do in fact apply to § 2255 motions.  *Ramos-Martínez v. United States*, 638 F.3d 315, 322 (1st Cir. 2011).  This Court's analysis thus proceeds under the framework established in *Ramos-Martínez*.

appeal his conviction.  On July 11, 2011, he moved for an order requiring the government to produce any telephone records or recordings of his conversations with attorneys John Benzan and Matthew Smith made between May 2, 2007, and July 2009.  On October 24, 2011, the Court granted the motion and ordered the production of the records.  On December 6, 2011, the Department of Justice produced 110 pages of telephone records and described the dates, times, and length of five known calls Figueroa made to his attorneys at the numbers he provided.  On January 6, 2012, Figueroa filed a supplemental memorandum that, among other things, responded to the government's opposition memorandum and discovery production.

With the telephone records and the filings by both Figueroa and the government now a part of the expanded record, the Court will consider Figueroa's § 2255 petition.  The Court will assume, for present purposes, that Figueroa requested no later than May 14, 2007, that his attorney file an appeal.

II.     **Analysis**

A.     **Equitable Tolling**

Petitioner bears the burden of establishing the basis for equitable tolling by showing "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented him from timely filing."  *Ramos-Martínez v. United States*, 638 F.3d 315, 322-23, 325 (1st Cir. 2011) (citation and internal quotation marks omitted); *see also Riva v. Ficco*, 615 F.3d 35, 39 (1st Cir. 2010) (holding that equitable tolling remains "the exception rather than the rule," and that a "habeas petitioner bears the burden of establishing the basis for equitable tolling").

Petitioner asks the Court to toll the period from May 15, 2007, to August 25, 2009, on the

ground that he was unaware that his attorneys had not filed an appeal of his conviction during

that time.  He contends that he was diligently pursuing his rights during that time, but he and his

family were misled by his attorneys.  Petitioner further asks the Court to toll the period from

June 8, 2010, to January 19, 2011, on the ground that he was in state custody while standing trial

in another case and did not have access to a federal law library.  He contends that he was

diligently pursuing his rights during that time, but could not file his petition because he lacked

required English-language assistance and access to a law library.

### 1.  Period from May 15, 2007, to August 25, 2009

The Supreme Court has held that attorney misconduct may constitute an "extraordinary

circumstance" supporting equitable tolling if it goes beyond "'garden variety' or 'excusable

neglect.'"  *See Holland v. Florida*, 130 S. Ct. 2549, 2564 (2010).  The First Circuit has further

suggested that the failure of an attorney to take legal action he had agreed to take on behalf of a

petitioner would likely constitute egregious behavior and create an extraordinary circumstance

that warrants equitable tolling.  *See Ramos-Martínez*, 638 F.3d at 323.

In *Holland*, the Supreme Court held that while the attorney's mistake or ignorance as to a

filing deadline might have constituted only ordinary negligence, his failure to heed requests by

his client to make the timely filing, accompanied by misrepresentations to his client about what

was done, amounted to more.  *Holland*, 130 S. Ct. at 2564.  In *Ramos-Martinez*, the First Circuit

suggested that the failure of the attorney's agent to "do what he agreed to do" – purportedly to

timely file a § 2255 petition – would also amount to more than ordinary negligence and

constitute an "extraordinary circumstance" for the purpose of equitably tolling the one-year

statute of limitations for § 2255.  *See Ramos-Martínez*, 638 F.3d at 323.  Other circuits have also

consistently held that serious attorney misconduct is sufficient for the second prong of the test for equitable tolling.[6]

In light of this precedent, the Court will assume that petitioner has shown "extraordinary circumstances" for purposes of equitable tolling.  As noted, the Court will assume that petitioner did request that his attorney file an appeal, if not in person after the sentencing hearing, at least no later than the telephone call on May 14, 2007.  Petitioner alleges that he did not learn that his trial attorney never filed such an appeal until August 25, 2009, and consequently asserts that the limitations period should be tolled until that date.

That is not, however, the end of the inquiry.  In order to be entitled to equitable tolling for that period, petitioner must also show that he had been pursuing his rights diligently throughout that period of nearly two years.

The Supreme Court has held that the diligence required for equitable tolling purposes is "'reasonable diligence.'"  *See, e.g.*, *Lonchar v. Thomas*, 517 U.S. 314, 326 (1996).  In *Holland,* the Supreme Court made clear that this is distinct from "maximum feasible diligence."  *Holland*, 130 S. Ct. at 2565.  The reasonableness of petitioner's actions depends on the totality of the circumstances.  *See Ramos-Martínez*, 638 F.3d at 324.

In *Holland*, the petitioner wrote his attorney numerous letters seeking information and giving directions, and repeatedly contacted the courts, clerks, and the bar association to have the

---

[6] *See, e.g., Spitsyn v. Moore*, 345 F.3d 796, 798 (9th Cir. 2003) (tolling state habeas petitioner's statute of limitations due to the "extraordinary circumstance" of egregious misconduct on the part of petitioner's attorney); *Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir. 2003) ("It is not inconsistent to say that attorney error normally will not constitute the extraordinary circumstances required to toll the AEDPA limitations period while acknowledging that at some point, an attorney's behavior may be so outrageous or so incompetent as to render it extraordinary."); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (holding that petitioner's "allegation that he was deceived by his attorney into believing that a timely § 2255 motion had been filed on his behalf presents a 'rare and extraordinary circumstance' beyond petitioner's control that could warrant equitable tolling of the statute of limitations" if petitioner reasonably relied on the attorney's misrepresentations).

attorney removed from his case. *Holland*, 130 S. Ct. at 2565. The petitioner in that case also immediately filed a *pro se* habeas petition on the same day that he learned the limitations period had expired due to his attorney's misconduct. By contrast, petitioner here exercised no such diligence during the period of more than two years during which he contends that he relied on his attorney's misrepresentation that an appeal had been timely filed.

The records produced in discovery indicate that petitioner made only the one call on May 14, 2007, to attorney Benzan or his representative. He then hired new counsel, Matthew Smith, while the time for an appeal was still pending. The retainer agreement says nothing about an appeal. He made four other documented calls to attorney Smith, the contents of which are at best unclear. The record also includes two letters from petitioner to attorney Smith, one in November 2008 and one in August 2009. Neither letter refers explicitly to an appeal, although both letters refer to petitioner's efforts through attorney Smith to have his sentence reduced pursuant to 18 U.S.C. § 3582. These were the only documented efforts by petitioner to communicate with his attorney over the course of more than two years, during which he alleges that he believed that his case was on appeal. There is no evidence of any misrepresentation or "lulling" by attorney Smith as to the pendency of an appeal. Finally, and perhaps most telling, petitioner did not immediately make any attempt, by motion, § 2255 petition, or otherwise, to file a direct appeal late when he allegedly learned in August 2009 that no appeal had been filed. Instead, petitioner waited until March 2010—more than seven months later—before attempting to address the situation.[7]

---

[7] The Ninth Circuit suggested that, without a legitimate explanation on the record, an even smaller lapse in time (five months) between when a petitioner was finally aware and able to file and when he actually did file could constitute a lack of reasonable diligence. *See Spitsyn v. Moore*, 345 F.3d 796, 802 (9th Cir. 2002); *cf. United States v. Wynn*, 292 F.3d 226 (5th Cir. 2002) (finding that a petitioner may have acted diligently when he sent a letter to the

The Court finds that petitioner's minimal contact with his attorneys and apparent lack of initiative fell short of reasonable diligence in pursuing his right to a direct appeal. Even assuming that petitioner asked attorney Benzan to file an appeal on his behalf during the telephone call on May 14, 2007, the matter seems to have stopped there. There is nothing in the record from that point forward until March 2010 to suggest that petitioner thought an appeal was pending or undertook any efforts to inquire as to the status of his appeal. During the same period, he did inquire of attorney Smith as to the status of his motion to reduce his sentence. Under the circumstances, petitioner has not demonstrated reasonable diligence, and therefore is not entitled to equitable tolling of the limitations period.

### 2.    Period from June 8, 2010, to January 19, 2011

Because the Court finds that equitable tolling does not apply to the period from May 15, 2007, to August 25, 2009, the petition will be dismissed as untimely regardless of whether the period from June 8, 2010, to January 19, 2011, is equitably tolled. In any event, the record does not provide sufficient details of the conditions of petitioner's imprisonment awaiting trial in state custody. Therefore, the Court declines to make a finding with regards to the equitable tolling of the period from June 8, 2010, to January 19, 2011.

It is well-established that only in unusual cases do the limitations of imprisonment rise to the level of "extraordinary circumstances" required to trigger equitable tolling. *Holmes v. Spencer*, 685 F.3d 51, 62-63 (1st Cir. 2012) (citing *Moore v. Battaglia*, 476 F.3d 504, 506-08 (7th Cir. 2007)). The inquiry again requires the Court to consider the totality of the circumstances to make this determination, and it is possible that "the whole may be greater than

---

court one month after learning that his attorney had not filed a § 2255 petition, and then filed a *pro se* petition 78 days after the court's response to that letter).

the sum of the parts." *Ramos-Martínez*, 638 F.3d at 324.

Here, petitioner alleges that his lack of familiarity with English, his transfer to state prison awaiting trial, and his limited access to a law library while in that institution combined to constitute "extraordinary circumstances" that affected his ability to file his § 2255 petition between June 8, 2010, and January 19, 2011. The government does not dispute that petitioner was in the custody of the Commonwealth during that time period. However, there is no evidence in the record, other than petitioner's allegations, that provides the details of the circumstances of his confinement while in state custody. The Court, therefore, does not have before it a sufficient record to determine whether the totality of the circumstances in this case amounted to "extraordinary circumstances" for the purposes of equitable tolling.

As noted above, the Court does find it instructive for the purposes of determining whether petitioner was diligent in pursuit of his rights, that he did not immediately make any effort, by § 2255 petition, or otherwise, to file a direct appeal late when he learned that no appeal was filed in August 2009. Had he done so, the conditions of his confinement with the Commonwealth of Massachusetts, almost a year later, would not have had any bearing on his ability to timely file his petition.

### B.   Underlying Ineffective Assistance Claim

The Court need not reach the merits of petitioner's claim because the petition was not timely filed, and he is not entitled to equitable tolling. Nonetheless, the Court will discuss them briefly in the interests of clarity and completeness.

The Supreme Court has "long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally

unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (citing *Rodriquez v. United States*, 395 U.S. 327 (1969)).  In *Flores-Ortega*, the Supreme Court further held "that when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." *Flores-Ortega*, 528 U.S. at 484.  The Supreme Court has held that in such a situation there is a presumption of prejudice because the deficient performance "led not to a judicial proceeding of disputed reliability, but rather to the forfeiture of a proceeding itself." *Id.* at 483.

Petitioner has alleged conduct that, if proved true, would have presented a valid claim under the rule of *Flores-Ortega*.  Petitioner, however, is time-barred from pursuing that claim further, because he filed his petition after the one-year statute of limitations period had expired, and he is not entitled to equitable tolling.

**III.**     **Conclusion**

For the foregoing reasons, petitioner's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 is dismissed as time-barred.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: December 18, 2012