**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **CARMELO FIGUEROA**, | |
| **Petitioner,** | |
| **v.** | **Criminal No. 06-40007-FDS** |
| **UNITED STATES of AMERICA,** | |
| **Respondent.** | |

**MEMORANDUM AND ORDER ON**
**PETITIONER'S MOTION FOR RECONSIDERATION**

**SAYLOR, J.**

Petitioner Carmelo Figueroa pleaded guilty in August 2006 to various drug charges and was sentenced to a term of imprisonment on May 1, 2007. No appeal was filed. On February 25, 2011, he filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2255, alleging, among other things, ineffective assistance of counsel in failing to appeal his conviction. On December 18, 2012, this Court denied the petition as time-barred, finding (among other things) that petitioner was not entitled to equitable tolling. Petitioner has now moved for reconsideration of that decision. For the reasons set forth below, the motion will be denied.

## I. Background

The expanded record now includes petitioner's affidavit of January 15, 2013, which was filed in conjunction with his motion for reconsideration.

In August 2006, Carmelo Figueroa pleaded guilty to various drug charges. He was sentenced to a term of imprisonment on May 1, 2007. At the conclusion of the sentencing, the Court advised him as follows: "[y]ou can appeal your conviction if you believe that your guilty

plea was somehow unlawful or involuntary or if there was some other fundamental defect in the proceeding that was not waived by your guilty plea . . . [y]ou must file any notice of appeal within ten days after entry of judgment." (Sent. Hrg. Tr. at 20-21). No direct appeal was filed. Figueroa contends that he asked his attorney to file an appeal, and that his attorney's failure to do so constituted ineffective assistance of counsel.

Figueroa was originally represented by attorney John Benzan. On May 14, 2007, Figueroa made a two-minute telephone call from Wyatt Detention Center to Rafael Benzan, the father of his attorney. He contends that he communicated with John Benzan through Rafael because Rafael spoke Spanish. He also contends that the purpose of the call was to inquire about the filing of his appeal. He contends that he was not satisfied with attorney Benzan's representation until that point, and therefore convinced his family to retain another attorney for the filing of his appeal.

The Court entered the final judgment and commitment order on May 15, 2007. Under the then-existing provisions of Fed. R. App. P. 4(b)(1)(A), any notice of appeal was due no later than May 30, 2007.[1] On May 24, relatives of Figueroa retained attorney Matthew Smith. The retainer agreement specifically obligated Smith to work on a "motion to vacate plea/crack ratio," but made no mention of a direct appeal. The motion referred to was presumably a motion to reduce Figueroa's sentence pursuant to 18 U.S.C. § 3582(c)(2), based on the reduction in the

---

[1] At that time, Fed. R. App. P. 4(b)(1)(A)(i) mandated that a criminal defendant's notice of appeal be "filed within 10 days after the later of the entry of either the judgment or order being appealed." Fed. R. App. P. 26(a) provided the method for computing time when such a deadline was given in the rules; for deadlines shorter than 11 days, intermediate Saturdays, Sundays, and legal holidays were excluded. Therefore, in this case, Saturday and Sunday, May 19 and 20, would have been excluded, as well as Saturday and Sunday, May 26 and 27, and Memorial Day, Monday, May 28, so that the 10-day filing period, as computed under the rules, ended on May 30, 2007.

guideline level for crack-cocaine offenses.[2] Figueroa contends that sometime in May or June 2007, attorney Smith met with him at the correctional facility but did not bring an interpreter. Figueroa contends that he told attorney Smith "as best [he] could that [he] wanted an appeal." (Recon. Aff. at ¶ 11). Figueroa contends that attorney Smith was hired to file an appeal, and that he believed that Smith was "working on his appeal." No appeal was ever filed.[3]

According to telephone records, Figueroa made four calls to attorney Smith between March 13, 2008, and February 10, 2009. Prior to the affidavit filed with his motion for reconsideration, Figueroa had not made any specific assertions concerning the content of those calls.[4] However, he now contends that during those calls he inquired about his appeal and attorney Smith referred to it as a "3582 motion;" he contends that he was misled and did not know that a "3582 motion" was not an appeal. He also contends that he attempted to call attorney Smith to discuss his appeal on 30 to 40 other occasions between May 14, 2007, and

---

[2] Figueroa now contends, however, that such a motion could not have been the subject of the retainer agreement, because the relevant amendments to the sentencing guidelines concerning the retroactivity of changes to the crack-cocaine guidelines were not promulgated until December 11, 2007, and did not go into effect until March 3, 2008. U.S. SENTENCING GUIDELINES MANUAL §§ 1B1.10, 2D1.1 (2008). He contends that attorney Smith would have had no basis to include such a motion as part of the services he offered in May 2007. However, those guidelines changes did not materialize out of thin air. While it is true that the amendments (after extended debate and publicity) were not officially promulgated until December, the proposed amendments were sent to Congress on May 1, 2007, and published in the Federal Register for notice and comment on May 21, 2007. Sentencing Guidelines for United States Courts, 72 Fed. Reg. 28,558 (May 21, 2007). Accordingly, it is highly likely—indeed, a virtual certainty—that on May 24, 2007, attorney Smith was very much alert to the possibility that the guideline range for crack-cocaine sentences would be reduced.

[3] Although not dispositive, it is noteworthy that Figueroa never identifies the specific issues he thought should have been appealed, but were not.

[4] Figueroa's only references to these calls came in his supplemental memorandum responding to the discovery production; he made no affirmative assertions as to their content. He asserted as follows: ". . . it is quite possible that Petitioner did in fact inquire on the status of the appeal, only to be assured that the appeal was filed and pending . . . The government's explanation that Petitioner made one call to his attorney on May 14, 2007, then made additional calls on March of 2008, *does not disprove* his allegations that during those calls he had requested a direct appeal be filed and that he was advised that the appeal was in the process of being filed." (Pet. Resp. to Disc. at 2) (emphasis in original).

April 25, 2009.[5]

On March 3, 2008, the new crack-cocaine sentencing guidelines went into effect. On June 27, 2008, Smith filed a motion seeking a reduction of Figueroa's sentence pursuant to 18 U.S.C. § 3582(c)(2) in light of the amendment of the sentencing guidelines. The motion papers made no reference to any appeal.

On November 24, 2008, Figueroa wrote to attorney Smith. The "subject" line of the letter stated, "Status of Pending Motion 3582 (c) (2)." The text of the letter stated in part as follows (errors in original):

> The reason of this letter is requesting information about my pending Motion 358 (c) (2), that was filed on April 15, 2008 [*sic*]. Would you please send me the status, and also advise me about the legal matters.

There is no mention in the letter of any appeal.

On July 21, 2009, this Court denied the motion for reduction of sentence.

On August 16, 2009, Figueroa wrote another letter to attorney Smith in which he complained about receiving no response to two previous letters and about the representation generally. That letter also made no mention of any appeal, but did include a summary of petitioner's own legal research into the crack-cocaine sentencing guidelines. Those two letters were the only documented efforts by Figueroa to communicate with his attorney over the course of more than two years, during which he alleges that he believed that his case was on appeal. There is no direct evidence of any misrepresentation or "lulling" by attorney Smith as to the pendency of an appeal.

Figueroa contends that he did not learn that no direct appeal had been filed until

---

[5] Because the Bureau of Prisons does not keep records of telephone calls that the receiving party does not accept, it appears that no documentary evidence is available to prove or disprove this contention.

approximately August 25, 2009. He contends that around that time a fellow inmate explained to him that a "3582 motion" was not the same as a direct appeal. According to Figueroa, after reviewing the motion filed by attorney Smith and other court filings, the inmate informed Figueroa that no direct appeal was ever filed. Upon learning this information, Figueroa did not immediately make any attempt, by motion, § 2255 petition, or otherwise, to file a direct appeal late. Instead, he waited until March 2010—more than seven months later—before attempting to address the situation.[6]

On September 3, 2009, Figueroa (now acting *pro se*) filed a notice of appeal of the denial of his motion under § 3582 to reduce the sentence.[7]

On January 28, 2010, Figueroa filed a "Notice to File Out of Time Appeal," alleging ineffective assistance of counsel for failure to file a second appeal. That pleading was docketed as a motion. The Court erroneously terminated that motion on February 25, 2010, incorrectly perceiving it to be a request to file a second appeal to the disposition of his § 3582 motion rather than an attempt to file a direct appeal of his conviction. At the time, the appeal of the § 3582 decision was already pending.

On March 8, 2010, Figueroa filed a "Motion to Resubmit a Notice to File Out of Time Direct Appeal," again alleging ineffective assistance of counsel.

---

[6] The Ninth Circuit has suggested that, without a legitimate explanation on the record, an even smaller lapse in time (five months) between the time when a petitioner was finally aware and able to file and when he actually did file could constitute a lack of reasonable diligence. *See Spitsyn v. Moore*, 345 F.3d 796, 802 (9th Cir. 2002); *cf. United States v. Wynn*, 292 F.3d 226 (5th Cir. 2002) (finding that a petitioner may have acted diligently when he sent a letter to the court one month after learning that his attorney had not filed a § 2255 petition, and then filed a *pro se* petition 78 days after the court's response to that letter).

[7] Although that notice of appeal was not filed within ten days, the Court later held that the notice of appeal was timely filed, on the grounds that he had not received notice of the decision until August 27, and that he had established good cause for an extension of time under Fed. R. App. P. 4(b)(4).

On May 24, 2010, this Court denied the March 8 motion, explaining that such a claim involved a factual inquiry that should be raised in a collateral proceeding brought pursuant to 28 U.S.C. § 2255. The Court explained that such a § 2255 motion was subject to a one-year limitations period that runs from the date of final judgment, but took no position on whether such a petition would be timely, or whether equitable tolling would apply.[8]

On June 8, 2010, Figueroa was transferred from federal custody to Massachusetts custody for trial on state narcotics charges, during which time, he contends, he did not have access to a federal law library. He was returned to federal custody on January 19, 2011.

On July 12, 2010, the Court of Appeals affirmed this Court's denial of Figueroa's motion under § 3582 to reduce his sentence.

On February 25, 2011, Figueroa filed a motion under § 2255 to vacate, set aside, or correct his sentence, alleging, among other things, ineffective assistance of counsel in failing to appeal his conviction.

On July 11, 2011, Figueroa moved for an order requiring the government to produce any telephone records or recordings of his conversations with attorneys John Benzan and Matthew Smith made between May 2, 2007, and July 2009. On October 24, 2011, the Court granted the motion and ordered the production of the records. On December 6, 2011, the Department of Justice produced 110 pages of telephone records and described the dates, times, and length of five known calls Figueroa made to his attorneys at the numbers he provided. On January 6,

[8] The Court noted at the time that the First Circuit had "yet to decide whether the doctrine of equitable tolling applies to § 2255 petitions." (Memorandum and Order at 3 (quoting *Bearreto-Barreto v. United States*, 551 F.3d 95, 100 (1st Cir. 2008)). The First Circuit has since held that equitable tolling principles do in fact apply to § 2255 motions. *Ramos-Martínez v. United States*, 638 F.3d 315, 322 (1st Cir. 2011). This Court's analysis thus proceeds under the framework established in *Ramos-Martínez*.

2012, Figueroa filed a supplemental memorandum that, among other things, responded to the government's opposition memorandum and discovery production.

On December 18, 2012—with the telephone records and the filings by both Figueroa and the government now a part of the expanded record—the Court denied the § 2255 petition on the ground that it was untimely. In making that determination, the Court assumed without deciding that Figueroa had requested no later than May 14, 2007, that his attorney file an appeal and found that his attorney's failure to do so constituted "extraordinary circumstances" for purposes of equitable tolling. However, the Court found that Figueroa did not exercise reasonable diligence in pursuing his right to a direct appeal for the period of time from May 15, 2007, to August 25, 2009 (during which period, he contends, he was unaware that no appeal had been filed).[9] Accordingly, the Court found that Figueroa was not entitled to equitable tolling for that time period, and that his petition was therefore time-barred.

On January 22, 2013, Figueroa moved for reconsideration of the denial of the § 2255 petition.

## II. <u>Standard of Review</u>

The Court has "substantial discretion and broad authority" to grant a motion for reconsideration pursuant to Fed. R. Civ. P. 59(e). *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 81-82 (1st Cir. 2008). However, a motion for reconsideration will be granted only upon a showing of (1) a "manifest error of law," (2) new evidence, or (3) a misunderstanding or other error "not of reasoning but apprehension." *Id.* A Rule 59(e) motion cannot be used to "advance

[9] The Court did not decide whether the period from June 8, 2010 (when he was transferred to state custody) to January 19, 2011 (when he was returned to federal custody) was subject to equitable tolling.

a new argument that could (and should) have been presented prior to the district court's original ruling." *Cochran v. Quest Software, Inc.*, 328 F.3d 1, 11 (1st Cir. 2003). Nor is a Rule 59(e) motion an appropriate means to "repeat old arguments previously considered and rejected." *Nat'l Metal Finishing Co., Inc. v. Barclays American/Commercial, Inc.*, 899 F.2d 119, 123 (1st Cir. 1990).

**III. <u>Analysis</u>**

In his motion for reconsideration, petitioner contends that a number of the Court's rulings as to the timeliness of his petition were clearly erroneous.

First, petitioner contends that it was clear error for the Court not to construe his "Motion to Resubmit a Notice to File Out of Time Direct Appeal," filed *pro se* on March 8, 2010, as a petition for habeas corpus relief pursuant to § 2255. It is true that the Court is required to liberally construe petitioner's filings due to his *pro se* status. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Instituto de Educacion Universal Corp. v. U.S. Dept. of Education*, 209 F.3d 18, 23 (1st Cir. 2000). And despite the rather strict pleading requirements for habeas corpus petitions, the First Circuit has indicated that "it might be possible to construe [a] motion [challenging a term of imprisonment] as one under 28 U.S.C. § 2255 for modification or vacation of an illegal sentence." *United States v. Cabrera-Polo*, 376 F.3d 29, 31 (1st Cir. 2004) (declining to so construe the petition at issue on account of the fact that it would have been a "second or successive" § 2255 petition).

However, there are several problems with petitioner's request to construe the March 2010 motion as a § 2255 petition. First, he is advancing that argument for the first time on a motion to reconsider, which is not appropriate. *See, e.g.*, *Cochran*, 328 F.3d at 11. Furthermore, the

Court's order of May 24, 2010, which denied his request to file an appeal late, very clearly stated that petitioner was required to file a petition under § 2255. Petitioner did not then request that the Court interpret his earlier motion as a § 2255 petition, but instead filed an actual § 2255 petition some months later. His complaint that the Court made a mistake in May 2010 comes very late in the day, and after he filed an actual § 2255 petition (which the Court is currently considering and which, if petitioner is correct, may well be a second or successive petition filed in violation of 28 U.S.C. § 2255(h)). Under the circumstances, the Court declines to treat petitioner's request to construe his March 2010 motion as a § 2255 petition.

As to equitable tolling, petitioner contends that it was clear error for the Court to find that he was not reasonably diligent because he did not immediately file a direct appeal after he learned that his attorney had failed to do so. He contends that because he filed his "Motion to Resubmit a Notice to File Out of Time Direct Appeal" within one year of learning that his attorney never filed a direct appeal, his § 2255 petition was timely.

It is true that the critical issue is whether petitioner was diligent between May 2007 and August 2009, not whether he was diligent after August 2009. *See, e.g., Harper v. Ercole*, 648 F.3d 132, 139 (2d Cir. 2011). Petitioner's argument, however, misinterprets the Court's holding and reasoning on the issue of diligence. First, the Court did not hold that petitioner was required to file a § 2255 petition immediately upon learning that his attorney had not filed an appeal, nor did it hold that he had to show diligence subsequent to the period that he sought to toll. Instead, the Court reasoned that a reasonably diligent person, having just learned—after more than two years—that his attorney had never filed a requested appeal, would promptly make *some* inquiry with the court and/or his attorney about whether an appeal could be filed late, or otherwise take

*some* steps to try to remedy the harm. The Court found that the lack of any such inquiry here, although not dispositive, was further evidence that petitioner had not diligently pursued the issue of an appeal. In other words, petitioner's lack of diligence *after* August 25, 2009, when he contends he learned for the first time that no appeal had been filed, tends to reinforce the conclusion that he had not been diligent for the two years *before* August 25. Accordingly, petitioner's motion for reconsideration on this point is misplaced.

Petitioner also contends that it was clear error for the Court to base its determination concerning his diligence on the relatively small number of telephone calls between him and his attorney as to which the government could produce records. Petitioner asserts that he unsuccessfully attempted to call attorney Smith some 30-40 additional times, and he should not be prejudiced because the government can produce no records of telephone calls from prisoners that are not accepted. Although petitioner did make passing reference to "multiple calls that [were] made to counsel that were unanswered because no one at counsel's office accepted the calls" in his initial briefing, he made no allegation as to the quantity of such attempted calls or their intended purpose until now, in connection with the motion for reconsideration. (*Compare* Pet. Resp. to Disc. at 2 *with* Recon. Aff. at ¶¶ 14, 18, 19).

In any event, it is unclear whether the evidence of unsuccessfully attempted telephone calls (even assuming the truth of petitioner's affidavit) would materially change the calculus. Among other things, petitioner does not contend that he ever checked with the Court to find out whether an appeal had been filed. *See United States v. Arcoren*, 633 F. Supp.2d 752, 760 (D.S.D. 2009) ("Despite the supposed diligence in attempting to contact trial counsel, when these contacts went unheeded, he apparently never checked with the federal court system to find

out whether an appeal had ever been filed. A reasonably diligent person in [the defendant]'s position could and should have ascertained whether an appeal had been taken a short time after the appeal deadline had passed and well before the 18 months he maintains it took him to find this out."). Petitioner does not contend that he wrote to his counsel, complaining of the failure to file an appeal. To the contrary, petitioner wrote to counsel about the status of his pending motion under § 3582, without mentioning any appeal. Diligence sufficient to warrant equitable tolling requires more than a passive response to a series of unanswered telephone calls.

Third, petitioner contends that it was clear error for the Court to decline to reach the questions of whether attorney Smith was retained to file an appeal and, perhaps more importantly, whether he deceived petitioner about its filing. Certainly deceit or misrepresentation by an attorney may lead to equitable tolling. *See Holland v. Florida*, 130 S. Ct. 2549, 2564 (2010) (holding that failure to heed requests by to make a timely filing, accompanied by misrepresentations about what was done, amounted to more than ordinary negligence); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (holding that petitioner's "allegation that he was deceived by his attorney into believing that a timely § 2255 motion had been filed on his behalf presents a 'rare and extraordinary circumstance' beyond petitioner's control that could warrant equitable tolling of the statute of limitations" if petitioner reasonably relied on the attorney's misrepresentations). Petitioner contends that attorney Smith led him to believe that he had filed a direct appeal of petitioner's conviction and sentence. He also contends that he did not know the difference between a direct appeal and a "3582 motion."

Neither petitioner's allegations of deception perpetrated by attorney Smith nor his claim of confusion as to the distinction between a motion to reduce his sentence and a direct appeal

were previously raised with the Court. Petitioner has offered no evidence in support of his current claim of deception, other than the single sentence in his January 15, 2013 affidavit that "At all times during his representation in this case, Smith led me to believe that a 3582 motion was an appeal, and that he was appealing my conviction and sentence." (Figueroa Aff. ¶ 21, Jan. 15, 2013).[10] Petitioner points to no specific statements, and provides no details of any kind, as to how the alleged misrepresentation was perpetrated. That claim is being made for the first time on a motion for reconsideration and nearly four years after (petitioner contends) he first learned that no appeal had been filed.[11] Under the circumstances, the Court declines to reconsider its conclusion that petitioner failed to exercise reasonable diligence.

A petitioner bringing a § 2255 motion is not entitled to an evidentiary hearing and bears the burden of establishing the need for such a hearing. *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). A § 2255 motion can be denied without a hearing if the allegations, accepted as true, would not entitle the moving party to relief. *Id.* at 226 (*citing Shraiar v. United States*, 736 F.2d 817, 818 (1st Cir. 1984)). That is the course that the Court initially took in the memorandum and order denying the petition here. Upon reconsideration, and considering the expanded record and the entirety of the circumstances, the Court sees no reason to alter that conclusion.

## III. <u>Conclusion</u>

For the foregoing reasons, petitioner's motion for reconsideration is DENIED.

---

[10] Petitioner also filed three essentially identical affidavits on April 22, 2011, from two brothers and a sister. All three allege in general terms that attorney Smith "did not comply with the contract agreement" they had with him because he did not file an appeal, and instead filed a motion to reduce the sentence under § 3582.

[11] The Court's order of December 18, 2012, noted that "There is no evidence of any misrepresentation or 'lulling' by attorney Smith as to the pendency of an appeal." *Id.* At 8. The first claim of misrepresentation or lulling made by petitioner came shortly after the issuance of that order, on January 15, 2013.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: August 2, 2013